## WILLIAMS *vs.* SHACKELFORD.

1. Where the facts of a case are clear and undisputed, the court may charge directly upon them without hypothesis.

2. W., a resident of North Carolina, executed to C., of the same State, a power of attorney to receive a slave from S., who resided in Alabama, and to sell him: C. passing through Alabama on his way to Mississippi, received the slave from S. and endeavored to sell him, but failed to do so: He then endeavored to hire him, but in this also was unsuccessful, and, not being authorised to incur the expense of taking the slave along with him in the stage—the mode of conveyance by which he was travelling—he thereupon left him with S., free of hire, until W. could be informed of the circumstances and make some other disposition of the slave: *Held*—That in this unforeseen emergency, the agent acted in the line of his duty, and that S. is not liable for the hire of the slave.

3. The declarations of an agent, acting within the scope of his authority, and of the party with whom he contracts, when made at the time of a transaction, are a part of the *res gestœ*, and admisisble in evidence. -

Error to the Circuit Court of Autauga. Tried before the Hon. John D. Phelan.

The facts of this case appear fully in the opinion of the Court.

Saffold, for plaintiff in error.

Bugbee, contra. ·

CHILTON, J.—This was an action of assumpsit brought by the plaintiff in error against the defendant, to recover for the services of a negro man slave. Verdict and judgment for the defendant. It appears that the defendant, who resided in Autauga county, had at one time hired the slave from the agent of the plaintiff, who resided in North Carolina. The plaintiff gave to Charles H. Cooper a written power of attorney to receive the negro man and sell him. The said Charles, being on a trip from North Carolina to the State of Mississippi, called upon said defendant for the boy, who gave him up to him and paid him the hire which had accrued up to that time. The said agent then undertook to sell the boy, and re-

Williams v. Shackelford.

ceived one offer to purchase him, but the purchaser desiring to buy on a credit, which he did not feel authorised to give, they failed to conclude the arrangement. Being unable to make a sale of the slave, and travelling, as he testified, in the stage, and not being authorised to incur the expense of taking him along with him, and inasmuch as the plaintiff did not desire that the slave should be taken back to him, he concluded to hire him out, and proposed to the defendant again to hire him. This the defendant refused to do at any price, alleging that the slave was a bad negro, and old, and was injurious to his younger negroes on the plantation. Finally, however, the defendant consented as a matter of accommodation to keep the slave until Cooper, the agent, should return home to North Carolina and inform Williams, so that Williams could do with the slave as he pleased. The same witness, Cooper, stated that Williams did not authorise him to leave the negro any where, or to incur any heavy expense in taking him along with him, and that he left the slave with the defendant, not knowing any other person to leave him with, and for the reason that the owner did not want him back home. The foregoing, embracing the substance of all the proof in respect to the agency of Cooper, the court charged the jury that under the agency as shown by the testimony of Cooper, he had the authority to leave the negro man with the defendant, and that the said plaintiff could not recover anything from the defendant for the time he had so kept said slave. The court also refused to exclude from the jury the declarations of the defendant made to Cooper, that he would not hire the slave—that he was a bad negro, &c. To this refusal, and to the charge given by the court, the plaintiff excepted, and now assigns the same for error.

1. There was no discrepancy or conflict in the testimony. The question was, whether the agent, having a special authority to receive and sell the slave, upon finding it impracticable to make a sale, or to hire him out, had, under the testimony as shown by the deposition of Cooper, the legal right to leave the slave with the defendant without hire. The judge, in our opinion, did not invade the province of the jury in the charge which he gave, viz. that under the testimony of Cooper, he had the authority to leave the slave as he did, and that the plaintiff

could not recover for the time he was so kept. In Henderson v. Mabry, 13 Ala. Rep. 713, we held that where the facts were clear and undisputed the court might well give the law of the case as applicable to them, without hypothesis; the charge here complained of, when not subjected to too rigid a criticism, does nothing more.

2. Did the court correctly state the law? The agent's authority in writing extended to receiving and selling the slave. He had no authority to incur the expense of taking him on his journey back to his owner. He did receive him and endeavored to sell him, but failed. Here his agency, as confered by the *letter* of the power, ceased. What then should he do with the slave? Was it his duty to take no further care of him, and set him at liberty, by which means he may have been lost to the owner? Clearly not. Had he done this, and loss have ensued, he would have been liable to the principal. The performance of his agency having become impracticable, for want of a purchaser of the slave, and having him in charge, it was his duty to make such disposition of him as, under all the circumstances, would contribute most to the interest of his principal. Not being able to hire the slave to any one whom he knew, until the plaintiff could be advised of his failure to dispose of him, so that he might make whatever disposition he pleased with him, he left him in the care of the defendant, subject to the future order of the plaintiff, but without hire. We think he had ample power to do this, under the exigencies of the case. Judge Story, in his commentaries on Agency, section 141, remarks that although the powers of agents are ordinarily limited to particular acts, yet that extraordinary emergencies may arise, in which a person who is an agent may, from the very necessities of the case, be justified in assuming extraordinary powers, and that his acts fairly done, under such circumstances, will be binding on his principal. See authorities cited in note 1, p. 168, (2d edit.), and §§ 85, 118, 193, 194, 237. In section 194, speaking of this principle, he says, "It is a proper corollary from it, that any unavoidable calamity, or overwhelming force or accident, without any default of the agent, will excuse him from the duties of a strict performance of his agency; *for all such cases are deemed exceptions to the general rule: A fortiori*, if the strict performance becomes impos-

sible, without any default of the agent, he is excused. In the case before us, not being able to comply with the instructions of his principal, the agent, in this unforeseen emergency, could not have acted with greater propriety than to secure the safe custody and forthcoming of the property, free of cost to the principal, until he could be informed and could make such disposition of the slave as he chose; and the defendant, having refused to hire the slave, but taking him merely as an accommodation to the agent, is most clearly not liable for hire.

3. It results from what we have said, that there was no error in the charge of the court to the jury, and also, that as the law confered upon the agent the power under the circumstances to leave the property with the defendant, the declarations of the parties made at the time of such leaving, and explanatory of it, forming a part of the *res gestæ*, were competent evidence and properly allowed to go before the jury.

Let the judgment be affirmed.