McCravey, ex'r, v. Remson.

~~~~~~~~~~

McCRAVEY, Ex'r. *vs.* REMSON.

1. A record is not evidence of any fact which can only be inferred from it by argument.
2. Admissions which have been acted on by others are conclusive against the party making them, in all cases between him and the person whose conduct he has influenced.   It is immaterial whether the admission be true or false, whether expressly made or only to be inferred from the conduct of the party, it being the fact that another person has been misled by it, that renders it conclusive.

McCravey, ex'r, v. Remson.

3. A person claiming title under one who is estopped is also bound by the estoppel, unless it is fraudulent.

4. H., who was the son-in-law of the plaintiff's testator, had possession of the slave in controversy at the time of the testator's death, under a parol gift to his wife. The plaintiff as executor demanded the slave, to be appraised as part of his testator's estate, and H. delivered her up, admitting that she belonged to the estate. The slave was inventoried and appraised, and H. afterwards hired her from the plaintiff and executed his note for the hire. While thus in possession of the slave H. sold her to F , who sold her to R., against whom the executor brought detinue to recover her. To prove that the slave had been charged to him as the property of the estate, the plaintiff offered a transcript of a suit in chancery previously instituted by himself for a final settlement of the estate. *It was held,*

1. That the record was inadmissible for that purpose, unless offered in connection with other proof. The fact which it sought to establish can only be collected from the transcript, if at all, by inference from the character and objects of the suit.

2. That H. is estopped, as against the executor, from setting up title to the slave under parol gift from the testator.

3. That the defendant claiming under H. is also bound by the estoppel, unless it is fraudulent.

Error to the Circuit Court of Talladega. Tried before the Hon. John J. Woodward.

This was an action of detinue instituted by the plaintiff in error, as executor of Kinchen Carr, deceased, against Remson, for the recovery of a negro girl named Lucinda. The plaintiff produced a certified copy of the last will and testament of said Carr, which was duly admitted to probate in Habersham county, Georgia. By said will, said testator bequeathed said negro to Joel Hunt, in trust for his wife Catharine, who was testator's daughter, during her natural life, and after her death to the heirs of her body. It was proved at the trial, that Hunt had possession of the negro, at the time of testator's death, and several years previously, under a parol gift from him to Hunt's wife; that he delivered her to the executor, on his demanding her, to be appraised as part of the estate, and admitted that she was a part of the estate; that she was inventoried and appraised accordingly, and remained in the possession, and under the control of the executor, for more than a year afterwards; that Hunt hired her from the executor, and gave his note for the hire,

and while thus in his possession, sold her to one Finley, who brought her to Alabama, and sold her to defendant.

The plaintiff offered in evidence a transcript of a suit in Chancery in Georgia, instituted by himself as executor of Carr for a final settlement of his testator's estate. The transcript was offered, in the language of the bill of exceptions, "for the purpose of showing that said estate had been declared insolvent, and to show the amount of negroes which had been charged against the plaintiff as executor." The transcript was excluded by the court, to which the plaintiff excepted.

The court charged the jury in substance; first, that although Hunt had delivered up the said negro to the executor, on his demanding her, to be appraised as a part of Carr's estate, and she was appraised accordingly, with the knowledge and consent of Hunt, and afterwards hired by him from the executor, yet if they believed that Hunt had a perfect title by parol gift from the testator, to his daughter Catharine, and acted under a mistake as to his right to the property, the plaintiff could not recover; and secondly, that although Hunt's title to the negro might be perfect by parol gift, yet he might waive it, and claim under the will only, but if they believed that he did thus waive his original right, and consent to hold under the will, still the plaintiff could not recover if they believed that the defendant was a *bona fide* purchaser for a valuable consideration without notice of such waiver. The plaintiff excepted to the exclusion of the transcript, and to the charges given, and now assigns them as error.

WHITE & PARSONS, for plaintiff in error :

1. The delivery of this slave by Hunt, under whom the defendant claims, to the plaintiff, as the property of his testator, for appraisement, was a deliberate act, done with a full knowledge of all the facts in relation to his own rights, or those of his wife Catharine; for the record shows that when the plaintiff called on him to deliver all the property belonging to Carr in his possession, he brought forward the slave sued for, and some other articles, but refused to surrender others, saying "Carr had given them to his wife Catharine." The mistake then, if any, was not as to the facts, but as to the law; and this will not avail him. Moreover, the plaintiff used no artifice or persua-

McCravey, ex'r, v. Remson.

sion, but simply discharged his duty as executor in good faith by demanding the surrender of such property as belonged to Carr's estate in his possession.—See Haden v. Ware, 15 Ala. 159; also, Champlin v. Laytin, 18 Wend. 410, and the cases cited in the opinion of the court.

2. The promissory note given for the hire not only acknowledges, by the act of hiring, the paramount title of the plaintiff, but it contains an express stipulation " to return said slave at any and all times." Here is another deliberate act, recognizing the title of the plaintiff as executor of Carr's estate to this slave. It is manifest " under these circumstances, he cannot be allowed afterwards to dispute that title on grounds with which he was well acquainted, when he made the admission."— See Gosling v. Birnie, 7 Bingham, 156, in C. L. R. vol. 20; Keiner v. Saunders, 6 Adolph. & Ellis, 515, vol. 33; Story on Bailments, 293; ib. Agency; McNeill v. Phillips, 1 McCord, 392; Manning v. Norwood, 2 Const. R. S. C. 413; Harris v. Watson, 2 B. & C. 540; Stephens v. Pain, 9 Cow. 274; Jackson v. Spear, 7 Wend. 401; Phillips & Brown, v. Hall, 8 Wend. 610; Osgood v. Dewey, 13 Johns 240; Stonard v. Duncan, 2 Camp. 344; Comyn's Dig. tit. Estop. [193] A. & B.; Bean v. Welsh, 17 Ala. R. 770; Winston v. Weathersby, 1 Nott & McCord, 373, and cases cited.

3. The facts and circumstances show sufficient to put a man of ordinary prudence upon inquiry; and if he disregarded them, he must sustain the loss; " because the vendor of a chattel, although in actual possession, can convey only such title as he has, and cannot by his sale divest the title of another, who neither assents to, nor recognizes his act."—See Lyde v. Taylor, 17 Ala. 274; Williams v. Marle, 11 Wend. 80; Everett v. Coffin, 6 ib. 609; Wheelwright v. Depeyster, 1 Johns. 470; Walker v. Miller, 11 Ala. 1082. "And when he holds them in a fiduciary capacity, with no express or implied right obtained from the owner to sell, or otherwise dispose of them, as where he is a bailee, or trustee, he cannot make a valid sale of them, so as to divest the actual owner of his right to reclaim them from any person, although such person may have bought them *bona fide*."—Story's Sales, §§ 201-188, and Hilliard on Sales, p. 24-25; Parsons v. Webb, 8 Greenl. 38.

4. It is further contended, that in delivering the slave to

plaintiff, as the property of Carr's estate, thereby inducing him to include her in his inventory and appraisement, at the valuation of four hundred dollars, the defendant Hunt is estopped to deny the plaintiff's right to the slave, because the inventory and return are at least *prima facie* evidence against him in a final settlement of the estate; and to overturn it, he must show that Carr had made a valid gift to Hunt. The evidence, to say the least, is conflicting on this point, and it is doubtful how a jury would find on that question. Is not this a burthen cast upon the plaintiff by the voluntary and deliberate act of Hunt, the consequences of which should rest on him, rather than on the plaintiff? Indeed, in some States, the inventory is held conclusive, because it is his own act.—See Wright v. Wright, 2 McCord Chan. R. 196. In Georgia, it is at least *prima facie* evidence against him, which he must overturn by proof.—See the Justice's Inferior Court, v. McLaren, 1 Kelly, 291. Such is the rule in this court by repeated decisions; and it has been held in a case, where the facts are strikingly analogous to this, "that the party was estopped from setting up his claim."—See Pool v. Harrison, (at the last June term, 1850,) and same case in 16 Ala. 175.

RICE & MORGAN, for defendant in error:

1. The transcript was properly excluded by the court, because—1. It was only offered "for the purpose of showing that the estate had been duly declared insolvent, and also to show the amount of negro slaves which had been charged against him." This is an admission that it was inadmissible for all other purposes; and it is not error to exclude it, if inadmissible for the purposes specified.—Creagh v. Savage, 9 Ala. 959. No other proof was offered in connection with it, and the transcript of itself does not show the facts which it was offered to prove.—Spears v. Cross, 7 Port. 437; Bell v. Rhea, 1 Ala. 83; Sessions v. Reynolds, 7 Smedes & M. 156. 2. When legal evidence is offered in connection with illegal evidence as a whole, the court is not bound to separate them, but may reject the whole.—Smith v. Zaner, 4 Ala. 99; Melton v. Troutman, 15 ib. 537; Moore v. Leftwich, 1 S. & P. 254. 3. A bill in chancery is not evidence for the party filing it.—Cawsey v. Driver, 13 Ala. 818.; Jones v. Kolisenski, 11 ib. 607; St. John v. O'Connell, 7 Porter, 466; McClelland v. Ridgeway, 12 Ala. 482.

McCravey, ex'r, v. Remson.

2. Hunt is not estopped from setting up his title to the slave. The appraisement and hiring do not amount to an estoppel, if Hunt acted under a mistake as to his right to the slave.—Hurd v. Cushing, 7 Pick. 169; Jones v. Sasser, 1 Dev. & Bat. 452; Johns v. Church, 12 Pick. 557; Loomis v. Green, 7 Greenl. R. 386; Morse v. Child, 6 N. Hamp. 521; Spence v. Mitchell, 9 Ala. 748; Hunley v. Hunley, 15 ib. 92; Carter v. Darley, 15 ib. 698; Shelton v. Carroll, 16 ib. 148; Edmondson v. Montague, 14 ib. 377. Estoppels are not favored in law, and he who claims by estoppel must prove it clearly. If the doctrine of estoppel applies at all, McCravey should be plaintiff in his individual character, and not as executor of Carr.

3. If Hunt is not estopped, *a fortiori* Remson is not, being *a bona fide* purchaser for a valuable consideration, without notice of Hunt's conduct, or the plaintiff's claim.—Gamble v. Gamble, 11 Ala. 966; Stewart v. Conner, 13 ib. 94; Wallis v. Long, 16 ib. 738; Spence v. Mitchell, 9 ib. 744.

PARSONS, J.—The record of the suit in Chancery, in Georgia, was offered as evidence of the insolvency of the estate of plaintiff's testator, and to show the number, value, &c. of the slaves charged to the plaintiff as executor. The insolvency of the estate is clearly shown by the transcript, and it is competent evidence of this fact; but we cannot see the relevancy or materiality of this fact, in this suit, for the plaintiff's rights are the same, whether the estate is solvent or insolvent. Hence the plaintiff was not injured by the exclusion of the transcript when offered for this purpose.

If the transcript had been offered in connection with other evidence, it would probably be admissible, as showing that the slave sued for had been charged to the plaintiff, as the property of the testator. But if this fact can be collected from the transcript alone, it is only by inference from the character and objects of the suit. Lord Chief Justice De Grey, in his celebrated opinion in the Duchess of Kingston's case, which has since been followed as a just exposition of the law upon this subject, holds, " that neither the judgment of a concurrent nor exclusive jurisdiction is evidence of any matter to be inferred by argument from the judgment."—2 Phillips on Evidence, 4. Taking this to be the law, the transcript was properly excluded by the court below.

But in the charge first given, we think the Circuit Court mistook the law. It is well settled that admissions which have been acted on by others are conclusive against the party making them, in all cases between him and the person whose conduct he has influenced. Nor is it material whether the admission is expressly made, or is to be inferred from the conduct of a party. And in the operation of this rule, it is unimportant whether the admission is true or false, made fraudulently or innocently, it being the fact of another's having acted on it, that renders it conclusive. In Dezell v. Odell, 3 Hill, 215, a constable had seized goods by virtue of execution, which were delivered to a third person, on his giving a receipt to re-deliver them on a certain day; when the day arrived, the receiptor refused to re-deliver them, claiming that the goods at the time of the levy and receipt were his own, and the court held, that in an action brought by the constable, to recover the goods, the receiptor was estopped from setting up title in himself, Cowen, J. in delivering the opinion of the court, saying, "Had the defendant's claim been interposed at the time of the levy, and he had signed the receipt in terms without prejudice to his right, the question would have been open. The creditor would thus have been put upon his guard, and enabled to seek for other property on finding that his debtor had no title to that in question. Indeed, here was a cause of action on the part of the receiptor, directly calculated to influence the conduct of the creditor in a way prejudicial to his interests, unless we hold the receiptor. The officer being induced to part with the possession, or to forbear taking actual possession, by the receiptor recognizing his right, and agreeing to take or hold for him, was itself an injury, if we now let the defendant go free. We then have a clear case of an admission by the defendant, intended to influence the conduct of the man with whom he was dealing, and actually leading him into a line of conduct which must be prejudicial to his interests, unless the defendant be cut off from the power of retraction. This is the very definition of an estoppel *in pais*. For the prevention of fraud, the law holds the admission to be conclusive."

In Gosling v. Birnie, 20 Eng. Com. Law R. 153, a defendant, who was a wharfinger, agreed to hold certain timber for the plaintiff, who purchased of one Ross. There was evidence

McCravey, ex'r, v. Remson.

showing that Ross had previously sold the timber to one Allum, of which the defendant had notice. Some time after the defendant agreed to hold the timber for the plaintiff, he presented a bill for wharfage due upon it, saying to the plaintiff, "These are the only charges on your timber." Afterwards refusing on demand to deliver the timber to the plaintiff, an action of trover was instituted to recover damages for its conversion. The defendant rested his defence upon the ground, that the timber was not the plaintiff's property, but the property of Allum. The court held that the defendant was estopped by his own admissions from denying that the plaintiff had title to the timber. "For," says Lord C. J. Tindal, "unless they amount to an estoppel, the word estoppel may as well be blotted out from the law." In the cases cited, as in this case, the plaintiffs had acted on the admissions of the defendants, and had placed themselves in a position different from that occupied by them before the admissions were made. So in this case, acting on the admissions of Hunt, the plaintiff inventoried the slave sued for, as the property of the estate of his testator; and by so doing, rendered himself *prima facie* liable to those interested in the estate, for the value of the slave. And it does not appear that he has been discharged from this liability. It is clear from the authorities cited, that Hunt is estopped under this state of facts, from contradicting his admissions, or setting up in himself a title to the slave, which existed within his knowledge, previously to the surrender to the executor.

It is, however, insisted that although Hunt is estopped from setting up a title to the slave, existing previously to the surrender to the plaintiff as executor, yet the defendant is not, being a *bona fide* purchaser, without notice of the plaintiff's rights. We think that a person claiming title under one who is estopped, will also be bound by the estoppel, unless the estoppel is fraudulent.—Sikes v. Basnight, 2 Dev. & Bat. 151; Phelps v. Blount, 1 Dev. 177.

The result is, that the judgment must be reversed, and the cause remanded.