## WILLIAMS vs. FITZPATRICK, GOVERNOR, &c.

1. When a paper is offered in evidence, and rejected by the primary court, as irrelevant, the Appellate Court will only examine the question of its relevancy.

2. Two suits were pending against a tax collector, for the county taxes of 1845 and 1846. On the trial of the suit for the taxes of 1845, he produced the receipt of the county treasurer for an amount greater than the sum due for the taxes of that year, but purporting on its face to be given for the taxes of 1845. He also examined the county treasurer as a witness, who testified that, though he would not deny his signature to the receipt, yet he was sure that defendant had never, at any one time, paid him so large an amount as that specified in the receipt: that if the receipt was his, it must have been given for some smaller receipts which defendant had never surrendered; that he was county treasurer for 1845-6-7, and had never had a final settlement with defendant. *Held,*

That upon this state of proof, defendant might introduce as evidence the said county treasurer's receipts for the year 1846, for the purpose of showing that all the receipts amounted in the aggregate to the taxes of the two years.

3. A receipt given by the county treasurer while in office to the tax collector, for the county taxes, is admissible evidence in itself at all times for the latter, upon proof of the signature and that the maker was county treasurer at the time of its execution.

ERROR to the Circuit Court of Morgan.
Tried before the Hon. Thomas A. Walker.

This was an action of debt instituted in the name of the Governor, for the use of Morgan county, against Thomas R. Williams and his securities, on his official bond as county treasurer. The suit was brought to recover the amount of the county taxes for the year 1845, which, it was alleged, the defendant had not paid over; and another suit was also instituted for the taxes of 1846, which was pending at the time of the trial of this. The facts of the case will be readily understood from the opinion of the court.

WM. COOPER, for plaintiff in error :

1. We insist that the receipts offered were, in connection with the receipts of 1845, pertinent, and that apart and of themselves they were pertinent.

The payment of taxes of 1846 raises the presumption of payment in 1845; be the presumption, ever so light, it is evidence, and the jury must have it for what it is worth in connection with other facts. 4 Philips' Ev., part 2,'page 581, citing, 2 Edward's Ch. R. 427; 9 Yerger 424, 428.

The admissions of a trustee (treasurer) against beneficiary are evidence *prima facie.* 3 Humph. R. 472 ; 23 Pick. 243. All surrounding circumstances that would throw light on the question at issue, if it can be legally proven, must be admitted. 8 Gill & Johns. R. 248. Evidence that at all tends to show the truth is pertinent. Littell's Selected Cases 499. So, too, it is competent, in connection with eight years lapse of time on a note, to prove that the holder was a close collector. 5 Yerger's R. 97, 98. Subsequent settlements and lapse of time are evidence of payment. Peck's R. 60, 65; 9 Yerger 424, 428 ; 2 Campbell's R. 321; 3 Hayd. 29, 31.

2. Tunstall was the officer and agent to receive the taxes collected by Williams, and all of Tunstall's admissions, and receipts ·mere competent, no matter when made or given, if he was in office at the time ; and his interest lead him to admit no payment not actually made, and, in fact, his interest was antagonistic to the discharge of Williams by payment to Tunstall. 26 Maine, (13 Shepl.) 107 ; 5 Washburn 349 ; 1 Comstock's R. ·525; 12 Ala. 77.

3. The entire transactions between the tax collector and receiving treasurer should have gone to the jury, if they tended

at all to show the state of account between them; for on that true state of the account depends the right of action on the bond sued on in this case, and every link of the chain of proof was admissible; see particularly, 8 Barr's Penn. R. 64; 13 Ala. 583; 13 Ala. 641; 3 Barr's R. 179; 12 Ala. 823.

4. Proof is often competent, yet of itself it is insufficient to maintain the issue. 1 Ala. 84; 5 Porter 155. If pertinent, it must not be rejected, because unaided it will be insufficient to maintain the issue. 7 Ala. 457; 7 Ala. 798; 3 Ala. 16; 2 Shepl. 108; 10 Missouri 345; 5 Monroe 502; 6 Serg. & Rawle 55, 6; 9 Cowen 83, 88; 19 Ala. 165.

5. Again, though the case stated by the attorney at the bar may not make the pertinence apparent, yet if it be pertinent it must go to the jury. 5 Hill's New York R. 291. Every link must come out that forms the chain of proof, for on the evidence the proof rests. 2 Watts & Serg. 411; 9 Ala. 313; 2 Edward's Ch. R. 427; 13 Ala. 718.

6. Again, that which is apparently foreign and irrelevant, may by the statement of counsel be shown to be applicable. 6 Ala. 390; 6 Ala. 407; 19 Wendell 203; 2 Starkie's Ev. 381.

7. The jury constitutes that branch of the court to whom the weight of testimony is left; it is error in a court to undertake to pass on the weight of evidence; that is the province of the jury. In this case we offered to prove that defendant had paid a sum or sums of money, which, in the agregate, made the taxes of 1845 and 1846. That was pertinent, and if pertinent should have gone to the jury; it was pertinent if insufficient, and the jury alone could pass on the sufficiency of the evidence; we might have argued properly an error in the dates of the receipts, or that the large receipts embraced smaller ones of 1845 and 1846; but all this was cut off by the court, and abstractly the minds of the jury would have grappled with the facts that the payments made the exact taxes of 1845 and 1846, and this we were excluded from proving. This court, on a former occasion, decided that it was proper to leave it to the jury to say, whether certain proof amounted to a warranty in the sale of a horse; this is going farther than we here need to go, because it left the law on certain facts to

50

the jury. 10 Ala. 386; 3 English, (Ark.) R. 157; 19 Johns. R. 313.

The question of warranty is often left to the jury, because it frequently depends on a chain of testimony on which they are constrained to pass in their verdict. 19 Johns. 290. This is much more difficult matter for a jury, than the mere question of payment, as in the case at bar; for in the case of warranty, law and fact are both involved in the issue and finding.

8. In the case at bar the plaintiffs in error, defendants below, relied on Tunstall, the treasurer, to make out their defence; his evidence turned out to be partly adverse, and he, in fact, imputed a fraud to defendant in getting the receipts, or some of them; under this state of the case they could not discredit him, nor show his incompetency, for they had waived any objection they could have made by introducing him; his interest conflicted with theirs, for he would be liable for all that Williams had paid him, and no more; but defendant below had the right to make up the defects of their defence by other proof, as Tunstall's acts, and the proof of other witnesses and papers. But in this use of papers and witnesses they were stopped and excluded by the court. 10 Ala. 386.

JAMES ROBINSON, contra:

The receipts offered were not properly proven; nor was there any offer so to prove them. Before they could have been made available against the county for any purpose, it should have been shown that they had been given by Tunstall at a time when, as the agent of the plaintiff, he had a right to give them. Bell v. Pharr et al., 7 Ala. 813. If this proof had been made, still the receipts were not admissible; because Tunstall, the agent, was present, and had been examined, and the court offered to let them examine upon all the points they desired. His oral testimony was higher and better evidence than his receipts. Bell v. Pharr et al., 7 Ala. 813.

Admit it to be true that Williams paid Tunstall too much for the taxes for 1845; with that fact the county had no connection. As an officer he could only receive what was due to the county. If Williams paid him more than this he must look to him individually for it. The county is no way bound by or for the act; because it was not done by Tunstall in the performance of any duty of his office.

When this excess was paid, as alleged, the taxes for 1846, perhaps, were not assessed. As well might we say a sheriff can receive money upon a writ in anticipation of the execution, as that a treasurer could receive taxes before they were due or had been assessed.

Again: suppose it is true that Williams paid Tunstall too much upon the taxes of 1845, what effect could the receipts for the taxes for 1846 have upon that? If the payments had been less in 1845, and greater in 1846, than the amount of the taxes, then the excess of 1846 might well be applied to the payment of the deficit of 1845. But it is not pretended that he paid too much upon the taxes of 1846.

What is the issue here? We say, the taxes of 1845 were not paid; defendant, that they were. The proof offered has no relevancy to this issue. Now if he paid the taxes of 1846, and no more, what effect can that fact have upon the question whether he paid in full the taxes of 1845?

PHELAN, J.—The defendant Williams introduced as a witness, in his behalf, Tunstall the county treasurer. After proving by him certain other receipts, which had been given by him to Williams, for the taxes of 1845, they came to a receipt which purported on its face to be a receipt from Tunstall for the sum of $1189 $\frac{95}{100}$ for the county taxes of 1845, dated 25th May, 1846. When testifying in respect to this receipt, Tunstall said, that, although he would not deny his signature, or that he had executed the same, yet "that he had no recollection of ever giving such a receipt, and stated, that he never received that amount of money from said defendant at any one time; and if the receipt was his, it must have been given by him in lieu of many smaller receipts, which smaller receipts he never got from the defendant."

In order to strengthen the character of this eleven hundred dollar receipt, which had been thus assailed by his own witness, whom for that reason he could not directly impeach, Williams offered a number of other receipts given to him by Tunstall, as treasurer, for the county taxes of 1846. In offering them, he stated, that he expected to show by them and those previously exhibited, that the whole taken together would amount to the county tax for the two years, 1845 and

1846. These receipts for the taxes of 1846, the court would not allow to go to the jury, upon the ground that they were not *relevant* to the issue.

The counsel for the defendant in error has argued, that they should have been rejected, because it does not appear that they were properly proved, or that Tunstall gave them at such a time as would make them evidence. They were rejected on the ground of *irrelevancy*, and we must confine our examination of them to that ground.

We think it quite clear that these receipts, which were rejected, should have been permitted to go to the jury.

Williams was sued on his bond for the county taxes of 1845, and in a separate suit for the county taxes of 1846. The proof is, that Tunstall was county treasurer for the years 1845, 1846 and 1847. He himself had already testified, that he had never had a full settlement with Williams, but had received payments from him and given receipts from time to time. If this eleven hundred dollar receipt was to be treated as good and valid, it, with the other receipts, would show that Williams had overpaid the taxes of 1845. But the counsel for Williams said, if you will allow all our receipts to go before the jury, they will show that the taxes for both years have been paid, and no more.

I am of opinion that these receipts were competent evidence, even in this view of the case, for in the subsequent suit, if Williams wished to avail himself of the benefit that any excess, in his payments or receipts for 1845, might give him, to make up a deficiency that might exist in the receipts of 1846, it would be important for him to show that he made a fair expose of the whole matter in the first suit. Otherwise, when he introduced the large receipt or some other in the second suit, alleging some mistake, the opposite party would say, this voucher was used in the other suit, but we never heard of this mistake before. If there were two suits for county taxes, and the tax collector had receipts from the county treasurer, that would cover both years in amount, but not in the terms of the receipts, this without more would make all the receipts relevant in both suits.

But the right to introduce the receipts of 1846, may be put upon a ground distinct from this. Tunstall, who was Wil-

liams' own witness, had, by his testimony, thrown a cloud of suspicion over the eleven hundred dollar receipt. It was the right of Williams to remove this, and his duty to do so, by all proper means. He could not impeach him, for he was his own witness. Indeed he might not feel willing to do so, even if he had the ability. The next thing was, to show that Tunstall was mistaken. He was not prepared to deny that he executed this receipt, but had no recollection of it; was sure Williams had never paid him so much at one time, and that this large receipt, if his at all, must have been given for smaller receipts which Williams had never surrendered. Here the man who is relied upon to support an important voucher, the very man who made it, surprises the party who introduces him, by raising very serious suspicions against it. He also says, that it must have been given for other receipts which are still in Williams' hands. He had before said, that he never had a full settlement with Williams, but had given receipts from time to time as money had been paid. While things are in this posture, Williams, to relieve the large receipt from the cloud thus cast upon it, says to the court, "I am sued as tax collector in two cases; Mr. Tunstall was county treasurer during all the time; now I propose to exhibit my receipts for 1846, to show that those, when added to these which I have already exhibited, including this one over which suspicion is cast, will just amount to the aggregate amount of taxes which I was bound to pay over in the two years." This court concur in the opinion, that such proof would have been calculated to strengthen the large receipt, against the suspicion cast upon it by the testimony of Tunstall, and by the fact that, including the amount of this receipt, the taxes for 1845 seemed to be overpaid; and that it should have been received. It was a feature in the case proper to go to the jury, and to be considered by them in making up their verdict. It is possible, that when other receipts came to be introduced, Tunstall might discover some that should have been surrendered, or if he did not, his own testimony would not tell with such powerful effect against the fairness of the large receipt.

It has been argued, that as Tunstall, who gave the receipt, was present as a witness, and ready to be examined on all

points touching them, that it was not competent to introduce the receipts as evidence in themselves at all. Tunstall was a competent witness for either party, it is true, but the holder of the receipts was under no obligation to call him. They were good testimony of themselves. They come within the well settled principle, that the admissions of an agent, made within the scope of his authority, and at the time of transacting the business of his agency, are the admissions of his principal. They are then part of the *res gestœ*, and can be proved as such. In this case the receipt of the county treasurer, is the receipt of the county, and there is no need to do more than to prove that the signature is genuine, and that the maker was county treasurer when it purports to have been made.

For authority on these points, see 1 Greenleaf, 125 *et seq.* Williams v. Shackleford, 16 Ala. 318; Bohannon v. Chapman, 13 Ala. 641.

For the error in rejecting the proof offered by the plaintiffs in error, the judgment of the court below is reversed, and the cause remanded.