## JOHNSON vs. MARSHALL.

[DETINUE FOR SLAVES.]

1. *Admissibility of record as evidence.*—In detinue for a slave, the record of a chancery suit, in which the plaintiff's vendor was complainant, and third persons were defendants, is not admissible evidence against the plaintiff, to show that, after the sale to him, his vendor also sold the slave to the defendants in that suit.

2. *Offer of evidence for specified purposes.*—When evidence is offered for several specified purposes, for some of which it is inadmissible, the court may exclude it altogether.

3. *Charge assuming fact not proved.*—A charge which assumes as true a fact which has not been proved, is erroneous.

4. *Measure of damages in detinue.*—In detinue, as in trover, the jury may assess the value of the property at any time between the demand and the trial.

APPEAL from the Circuit Court of Sumter.

Tried before the Hon. WM. S. MUDD.

DETINUE by Matthew A. Marshall, against Abram Johnson and Thomas A. J. Cliatt, for four slaves, to-wit, Amos and Sylva, with their two children. The defendants executed the statutory bond, and retained the possession of the slaves. The cause was tried on issue joined, but no pleas appear in the record. The facts disclosed on the trial, and the rulings of the court to which exceptions were reserved, are thus stated in the defendants' bill of exceptions:

"The plaintiff introduced a witness who testified, that he knew the slaves sued for, the value of each, and the value of their hire. The plaintiff's counsel then asked said witness, 'what is the value of each of said slaves separately.' The witness stated the value of each separately, but did not state the time when they were worth those sums respectively,—only saying, 'Amos is worth $1400,' and so on of the rest. He also stated the average value of each of the slaves, from the commencement of the suit to the time of the trial; and that he had known them to be in the possession of the defendants since the commencement of this suit. The plaintiff then proved the execution of a bill of sale to him by one James Thompson, dated the 24th May, 1847, for the two slaves, Amos and Sylva, with another named Tom; and then proved, that the other two slaves sued for were the children of said Amos and Sylva, and were born after the execution of the bill of sale, and while said slaves were in the possession of the defendants. He then read in evidence the detinue bond executed by the defendants, which recited the levy by the sheriff, and that the slaves were in the defendants' possession at the service of the writ, and was conditioned as the statute then required. The plaintiff having here rested his case, the defendants then read in evidence an instrument in writing, in the following words:

"' The State of Alabama, } This is to show, that I have
Sumter County. } this day purchased of James
Thompson three negro slaves, to-wit, Amos, Tom and
Sylva; which negroes said Thompson is to have back,
whenever the sum of eleven hundred and thirty-two dol-
lars is paid up to the said Marshall, with all the hire that
may accrue before the discharge of the above mentioned
sum. May 24, 1847.' (Signed by M. A. Marshall, and
attested by Thomas Shurley.)

" The defendants then offered in evidence the record
of a suit in the chancery court of Sumter county, in which
the said James Thompson was complainant, and John B.
and William H. Thompson were defendants. This was
offered for the pupose of showing that said James Thomp-
son, after he made the said bill of sale to plaintiff, sold
the said slaves to the said John B. and William H.
Thompson, and delivered said slaves to them; that said
slaves were afterwards restored to the possession of said
James Thompson, by virtue of a writ of seizure issued
out of the chancery court in said suit; and that upon the
termination of said suit, and under a decree therein ren-
dered, the said John B. and William H. Thompson recov-
ered said slaves from the possession of said *Abram John-
son* (?) who delivered them up to the said John B. and
William H. Thompson in the year 1852. The court
refused to permit this record to be read in evidence, for
the purposes for which it was offered, and the defendants
excepted. There was no evidence that the said slaves
passed out of the possession of the said James Thompson,
except that furnished by said bill and the said writing
from Marshall to James Thompson.

" This being substantially all the testimony introduced
on both sides, the defendants asked the court to charge
the jury as follows:

"' 1. That the bill of sale and defeasance, taken
together, constitute a mortgage, which is governed by the
law applicable to mortgages in respect to their registra-
tion; and that if said mortgage had not been recorded, it
was void as to the defendant, who held under a purchase
from James Thompson, without notice.'

" ' 2. That the value of the slaves, in this action, should be ascertained at the commencement of the suit, or at the time of demand made; and that if the jury were not satisfied that the valuation, as shown by the evidence, related to that period of time, their finding must be for a nominal sum in respect to the valuation.'

" The court refused each of these charges, and then instructed the jury, 'that they were authorized to find the highest value of the slaves proved, from the time the writ in this case was served, to the time of the trial.'"

The defendants excepted to the charge given, as well as to the refusal of the charges asked; and they now assign as error all the rulings of the court, as above stated, to which they reserved exceptions.

Wm. Boyles, and J. W. Shepherd, for appellants.
Turner Reavis, contra.

STONE, J.—This action of detinue for slaves was brought in the year 1850, by the appellee, against Abraham Johnson and T. A. J. Cliatt. The title of plaintiff consisted of a conveyance to him by one James Thompson, dated May 24th, 1847. After the plaintiff had made a *prima-facie* case, " the defendants offered in evidence the record of a suit in the chancery court of Sumter county, in which the said James Thompson was complainant, and John B. and Wm. H. Thompson were defendants, for the purpose of showing that the said James Thompson, after he made the said bill of sale to the plaintiff, sold the slaves mentioned in said bill of sale to the said John B. and William H., and delivered said slaves to them; that afterwards the said slaves were restored to the possession of the said James Thompson, by virtue of a writ of seizure issued out of the chancery court in said suit; and that upon the termination of said suit, and under a decree therein, the said John B. and William H. Thompson recovered said slaves out of the possession of the said Abram Johnson, who delivered them up, in obedience to said decree, to the said John B. and William H. Thompson, in the year 1852." The court refused to permit this

record to be read in evidence, for *the purposes* for which it was offered, and the defendants excepted.

It is manifest that, for most of the purposes for which the record from the chancery court was offered, it was *res inter alios acta*, and inadmissible. For certain purposes, viz., that the judgment or decree was rendered, and the time when it was pronounced, the record being a public transaction, it was evidence for or against any person. It was not in this case, so far as we are informed, evidence of the facts recited in, or found by it. To point out no other objection, it was not, and could not be, evidence against the plaintiff in this suit of a sale by James, to John B. and William H. Thomson. The defendant specified the purposes for which he offered it in evidence, and the court refused to receive it for those purposes. The record does not inform us that the defendant desired to use the evidence, unless he would be permitted to use it for the purposes which he specified. The court was not bound to subject the offer to a rigid analysis, separating the legal from the illegal purposes; but was authorized to respond to the proposition as submitted. In this particular, the court committed no reversible error. 1 Greenl. Ev. §§ 538, 539, 522, 523, 404; McCravey v. Remson, 19 Ala. 430; Miller v. Jones, 29 Ala. 174. See also authorities collected in Shepherd's Digest, 612, 613; Harris v. Plant, 31 Ala. 639; Walker v. Blassingame, 17 Ala. 810; Garrett v. Garrett, 27 Ala. 687; King v. Pope, 28 Ala. 601; Shep. Dig. p. 596, § 170; Williams v. Fitzpatrick, 20 Ala. 791.

[3.] The bill of exceptions purports to set out the substance of all the evidence. It contains nothing which tends to show that defendant was a purchaser of the slaves from James Thompson. The first charge asked assumed it to be a fact, that defendant *held under a purchase from James Thompson*. For erroneously assuming this *as a fact*, if for no other reason, the court rightly refused to give this charge.—Hollingsworth v. Martin, 23 Ala. 591; McKenzie v. Branch Bank, 28 Ala. 606; Tarleton v. Johnson, 25 Ala. 300; Shep. Dig. 460, § 30.

[4.] The charge asked and refused, and the charge

given, on the subject of value, may be considered together. They present the only other question raised by the exceptions. We have found no reported case of an action in detinue, which considers the precise question here raised. In the case of White v. Ross, 5 S. & P. 123, 129, the slave which was the subject of the action had died pending the suit, and the defendant contended that he should not be held accountable for its value; that the proper measure of recovery was the value of the property at the time of the trial; and inasmuch as the slave was dead and valueless at that time, he should not be required to pay the alternate value. In replying to that position, Judge Taylor, in delivering the opinion of the court, said: "It is in no case determined, that the value of the property at the date of the judgment is to govern the verdict of the jury. Nor can I see any good reason, why a different rule should prevail in this case, from that which should govern in an action of trover; and I am strongly inclined to the opinion, that the verdict should be governed by the value at the time of suit brought, or demand made."

While the case of Ross v. White is an authority to the point, that the death or destruction of the property, pending an action of detinue for its recovery, does not prevent a judgment for its alternate value, it was not necessary to decide, nor was it decided, that the value at the time of demand made, or suit brought, is necessarily the measure of recovery. That case is also an authority, to some extent, favoring the idea, that there is an analogy between the actions of detinue and trover, in the matter of the assessment of value.

In actions of trover, it has long been the settled rule in this State, that the jury are not limited to any precise point of time in fixing the value of the property converted, but may locate it at any time between the demand and the trial.—See Ewing v. Blount, 20 Ala. 694; Jenkins v. McConico, 26 Ala. 213; Williams v. Crum, 27 Ala. 468.

In Archer v. Williams, 2 Car. & Kir. (61 Eng. Com. Law,) 26, an action of detinue was brought to recover scrip which had been deposited with defendant. Pend-

ing the defendant's possession, the market value of the
scrip had greatly deteriorated; but before judgment, the
scrip was given up by the defendant. The question was
the measure of damages; and the court, in charging the
jury, said, "The measure of damages is the highest sum
for which the scrip could have been sold, from the time
of the detention until the time when it was returned.
The plaintiff is entitled to the full amount. A wrong-
doer cannot be let off with less than that."

The jury did not act on the direction of the judge, but
assessed the damages at what they concluded was a fair
average value of the scrip. The case was then, by con-
sent, taken up as on a charge that the plaintiff was enti-
tled to more that nominal damages. In the exchequer
chamber, 5 Mann., Gran. & Scott, (57 Eng. Com. Law,)
318, the judgment was affirmed. See, also, Sedg. on
Dam. m. p. 475, 497–8. These authorities certainly show
that, in the action of detinue, the jury may regard the
circumstances—the fluctuations in the value of the prop-
erty—in assessing the plaintiff's damages.

In Oden v. Stubblefield, 2 Ala. 684–8, the plaintiff had
but a life estate in the property; and the question was,
whether the jury should graduate the alternate value by
the value of the life estate, or should give the value of
the absolute property. This court said: "It is difficult
to conceive of any legal reason why the defendant in
error should not, if entitled to the slaves, have had a
verdict and judgment for their full value, so as to coerce
their delivery. The action is detinue, and the primary
object to be effected, the recovery of the specific prop-
erty."

On principle, we think stronger reasons exist for giving
the full value, when the action is detinue, than when the
suit is in trover for the value of the property converted.
The fact that the plaintiff sues in detinue, affords evidence
that the plaintiff desires the specific property, and not its
money value. This is almost universally the case, when
slaves are the subject of litigation. If the plaintiff have
no title, of course the measure of recovery is unimportant
to either party. If, however, his title be the best, he

should have all the aids which the law can afford, to compel a restitution of his property. The defendant is not injured by an assessment of the highest value, because he can relieve himself by a restoration of the goods. We hold, therefore, that in actions of detinue, the same latitude of discretion in fixing the value is allowed to the jury, as has heretofore been settled as the true rule in trover.—See authorities *supra*.

Under this rule, the second charge asked should not have been given, and the affirmative charge is free from error.

Judgment affirmed.