Judge Rowan
delivered the opinion of the court.
Uriel Mallory, on the 12th day of May, 1780, made the following entry :
“Uriel Mallory enters 2000 acres [of land] upon treasury warrant, on the south side of Elkhorn, below the “main fork, between the lines of general Lewis and gener“al Stephens, and to run along Stephens’ line towards the “Kentucky fqr quantity;” for which a patent issued, bearing date the 1st day of May, 1792. On the 311 day of May, 1797, Mallory conveyed the said tract to Lewis Craig, and Lewis Craig conveyed the said tract, at different times and in different parcels, to the appellees respectively, who respectively took possession of, and settled upon, their several portions. On the 1st day of April, 1785, two patents were obtained by William M’Cracken, cnc for a settlement of 400 acres, the other 1⅜ a pre-emption of 1000 acres, covering the greater part of the land embraced in Mallory’s aforesaid patent. Richardson Allin and Permelia his wife, (she being the daughter and heiress o? the said William M’Cracken, who had departed this life,} instituted actions of ejectment in the Franklin circuit court, and obtained judgments therein against the appellees. Lewis Craig exhibited his bill on'the chancery side of that court, alledging Mallory’s aforesaid entry and patent, and his purchase from the said Mallory, his sale to the appel-lees, and the judgments of eviction in the ejectments aforesaid against the appellees. He insisted that Mallory’s entry was a good and valid one, and his patent thereon legally obtained, and that the claim of Allin and wife was vague and void. He prayed and obtained from the court an injunction to the judgments in the ejectments aforesaid. Al-lin and wife answered the bill of Craig, relied upon the validity of their claim, as derived from their ancestor, M’Cracken, urged in addition to the validity of their entries, the seniority of their patents. Craig’s bill, upon a final hearing, was dismissed with costs. The appel-lees afterwards filed their bill on the chancery side of the same court, against John Allin, to whom Richardson Allin and wife had conveyed pending the suit aforesaid; they set out Mallory’s aforesaid entry, patent, sale and conveyance *526 tp. Craig, and the cinveyanccs to them by Craig respective*-lr; insisted upon tije specialty, validity andíegality of their. claim, and urged that the claim of Allin is vague and void; they recited th® ejeot&ents aforesaid, and the obtention of judgments therein by Richardson Ailin' and wife, against them, and prayed and obtained an injunction of the said judgments. John Allin answered their bill — denied the validity of Mallory’s entry, insisted upon his senior patent, and urged, in bar of their right to sue, the suit aforesaid of Craig vs. Allin and wife, and the decrefTherein-r-that suit» be insisted, was instituted at their instance, with their assent and approbation, involved the same nm|ter, was conducted at their expense, managed according to their will, sustained by their personal efforts, and intended for their benefit; He urged, that although Craig was the nominal, they were the real complainants therein ; that some of them were the securities of Craig in the injunction bond, and that they all retained the possession of their lands, by rear son of the said suit, during the pendenby thereof. As further evincive tSet the appellees were virtually parties to the suit, be alledged that they, or most of them, had, previous to the institution of that suit by Craig, respectively released errors in the ejectment suits, as a prerequisite to the ob-tention of the injunction prayed for therein. John 'Allin, after he had answered, departed this life, and file suit was revived in the names of his heirs, the appellant?, and upon the trial and final hearing thereof, a decree was pronounced in favor of the appellees, from which an appeal was prayed and granted.
Parties and -p-ivies^to a (leet*e or Uy^and cannot red scui.s »ba same mat-4erm another
The question first presented for the consideration of this court, is the competency of the matter alledged in the aiiT swer, to bar the suit of the appellees.
There is no doijbt but that the parties to a suit, eithe.r at law or in chancery, are bound by the judgment Or decree pronounced therein, and are bound thereby, (while it reína*ns únreversed,) from re-discUssi'ng in another suit, the matters thereof; and that their privies are alike bound antj barred. This principle is so intrinsically just and fp obviously necessary, that it has obtained the place and character? 0j a ru¡e ¿j ¡aw^ V/ith all the commentators upon, and compilers of, our laws. The decree in the case of Craig vs. Alli'n and wife, purports to embrace the Same matter, embraced by the bill of the appellees, to have beep upon the merits, and as it was final and remains unreversej). *527 they, if they can be considered as parties thereto, must, according to the rule aforesaid, be barred or bound thereby,
.To sscer- or ihe matter involved, re-to the record,
/¾⅜⅛, ul those of contract, <?;: of
To ascertain the extent of the effect of a judgment or decree, in relation either to the matters thereof, or parties thereto, the record of the suit, in which it may have been rendered or pronounced, should be explored. It affords the information most, if not solely, to be relied upon, in the trogress of silch an enquiry. The law imputes to the record absolute verity, and will not permit the matter which it imports, to be gainsayed or traversed. A record is defined to be the history of a suit, from its commencement to its conclusion, inclusive; and in every stage of its progress, the forms arjd devices of the law, are admirably adapted to the superinduction of that verity, which it ascribes to the record thereof, in relation either to the parties thereto or the matter therein. To each party there is afforded the most ample and appropriate means, of extracting from the suit all the doubt and uncertainty which may exist (herein, in relation to the personal competency of his adversary, orto the matters alledged by him.
And hence results (as we believe) the rule, that none are to be considered as parties to a suit and bound in that character, by a judgment or decree therein, but those who are named as such in the record thereof. The appellees are not named in the record of the suit of Craig against Alien ápd wife as parties thereto, and of course, according to the rule of law last mentioned, cannot, in that character, be bound or barred by the decree pronounced therein. Not being barred as parties to that suit, it remains to be enquir-ed, whether they are barred as privies1? The most general division of privies is, into those of contract, of estate, and of blood. Privity of blood is not alledged in this case, That of estate cannot be relied upon, because Craig, at the time of the institution of the suit aforesaid, bad no estate, interest, title or claim in, or to/the land in controversy, either in law/jr equity. That of contract did not exisi; for anterior to that time they had consummated their purchases, and bad in themselves the legal, as well as equitable title to the land. As privies, therefore, w'e cannot think they are bound or barred by the decree.
But it is alledged that they had an interest, and took an agency in that suit, which ought to subject them to the decree therein, as virtual, as much as if they had been express parties thereto. Any zeal which third persons may display *528 jn favor of a party to a suit, or any assistance they may af-Grd him, either in money or services, may subject them to the animadversion of the law as barrators or maintainors, or entitle them to the kind regards of the good and the virtuous, asa spirit of .unjust and Oppressive litigation, or the just claims of worth and indigence; stiáll have been sub-served or promoted thereby.
4 A person an'"ctíve¡?e,t fn sustaining a claim, does not^makehim ¿nut. y 0 e
But it would be a dangerous doctrine to say that: those c*rcumstancesi or any of the other acts, which are alledged to have been done by, the appellees in relation to that suit* should subject them to the decree therein as virtual parties thereto. It would be substituting vague conjecture, or at best, the erring discretion of the judge, for that record certainty which it is believed the law affords in that class of cases. Upon the criterion afforded by the law, we can know certainly, by an inspection of the record, who were parties to the suit, and we can know certainly the extent to which their interests have been settled by a judgment or decree therein, and we can know as certainly that none other than they and their privies are bound thereby. But if we can depart from the record arid ascertain by proof aliunde who were parties to a suit, other than those named as such therein, may we not, with the same reason, ascertain by parol what Other subjects than those specified in the bill or declaration, were involved, in the suit; arid settled by the decree or judgment,? And e converso may we not ascertain by parol that a person expressly named in the record of a suit as a party thereto, was only nominally and not really so; and that some pf the allegations in a declaration or bill, were not considered or regarded by the jury or the chancellor, and that others were only partially considered, and are therefore legitimate subjects for future adjudication? If such a theory were adopted; might not justice be denied to some citizens, in violation of their constitutional right thereto, on the ground that they had been virtually parties to a suit, in the record Of which they had not so appeared or been named? and might not other citizens, on the same theory, be vexed and harrassed, and have those rights which bad been settled by adjudication, jeopardised by fediscuss-ion in successive, suits? Ih fine, might not the peace of the citizens and their dearest rights upon such ⅛ theory, be subjected to the frailty of human memory, the weakness of human intellect, and the wickedness of the human heart? h would be unwise, we think, to adopt a theory whereby *529 the topics upon which weakness or wickedness might act, would be multiplied, and the range of error enlarged.— These topics are unhappily, in despite of the wisdom and caution of the law, but toq numerous. The maxim of law, that “the worn way is the safe way,” is, we think, wise, and forbids us to look out of the record of a suit for the parties thereto.
Hardin and Talbot for appellants, Wicklijfe and Bibb for appellees.
Being of opinion that the appellees were not bound by the suit and decree therein of Craig vs. Allin and wife, from maintaining this action, it becomes necessary to examine the entry of Mallory under which they claim.
, The objects called for in that entry are, we think, sufficiently established by the testimony in the cause, both as to ther identity and notoriety. It was sustained by this court in the case of Majors and Fishback, decided at the fall term, in the year 1817, and we think the proof as plenary in this as it Was in that case. But the survey thereof, we think, has been erroneously made. The lines running with those of Stephens and Lewis, should have been extended in the same direction towards the Kentucky river so far as, that a line at right angles from that which binds on Stephens’ survey, would connect the two and include the quantity.
It is, therefore, decreed and ordered, that the decree of the court below be reversed with costs, and that the cause be remanded, with directions that a' decree be pronounced in favor of the appellees, for so much of the land in controversy as shall have been found by actual survey to be within the appellees’ patent boundaries, and within the survey when made conformably to the above opinion.