## THE STATE BANK *vs.* EDWARDS & WALKE.

1. The answer of a corporation not being under oath, the same amount of evidence is not required to disprove its denials as in other cases.
2. When an execution, which has been levied on property of the principal debtor sufficient to satisfy it, is returned by order of the plaintiff, and the property released, the surety is discharged.

ERROR to the Chancery Court of Tuskaloosa.
Tried before the Hon. W. W. Mason.

Edwards & Walke filed this bill to restrain the collection of a judgment which the State Bank at Tuskaloosa had recovered against them. The bill alleges that the complainants became the sureties for one Houston, in 1837, on a certain note which was discounted by the said Bank; that the note was extended at maturity by the Bank, and a new note executed by Houston with other securities, and that this was done without the knowledge of complainants; that the Bank afterwards, notwithstanding the extension of the debt, and the discharge of complainants, brought suit against them and Houston, on their original note, and complainants, being still ignorant of the arrangement between Houston and

the Bank for the extension of the debt, suffered judgment to go against them by default; that an execution was issued on this judgment, and was levied by the sheriff on ten bales of cotton, which was more than sufficient to pay the balance due on the judgment, after deducting payments made on the debt by Houston; that this execution was returned by order of the Bank, and the property discharged, without the knowledge or consent of complainants; that Houston soon afterwards became insolvent, and removed from the State; and that the Bank had issued another execution on the judgment against complainants, which was then in the hands of the sheriff. The answer of the Bank, under its corporate seal, denies all the material allegations of the bill, and demands proof. The chancellor held the proof sufficient, and rendered a decree in favor of complainants, perpetually enjoining further proceedings for the collection of the judgment.

P. & J. L. MARTIN, for plaintiff in error.

1st. The first ground relied on in the bill is, that before suit was brought at law, the Bank extended the time of payment of the note to the principal, Houston, without the consent of complainants, of which they were ignorant, until after the judgment at law. This charge is denied by the answer, and there is no proof of the fact.

If this charge was made out by proof, it would not be sufficient as made in the bill, for it is not pretended that the Bank is implicated in the concealment, nor do they charge or show their diligence to discover the same; and hence, the complainants are subject to the rule laid down in the cases referred to here. French v. Garner, 7 Por. 549, and the numerous cases subsequent.

2d. The second ground relied on by complainants is, that after the judgment was obtained, an execution thereon was levied on certain cotton of the principal, Houston, of sufficient value to have satisfied the judgment, which was released to the said principal, and the execution returned by order of the plaintiff. This charge is denied by the answer, and the proof is utterly insufficient to sustain it.

This point, if completely sustained, affords no ground for the relief sought. In this view we are fully sustained, by

many decisions of this court, a few *only* of which I here refer to. The recent case of Godden & Lowry v. The Bank, decided by this court, the opinion by Justice Chilton, fully settles this view. 15 Ala. Rep. 616, and cases there cited.

If either of the grounds set up by the bill be true, the complainants had ample remedy at law.

The alleged extension of time afforded a defence at law, for failure to make which, the excuse is insufficient.

The second ground in regard to the levy of the execution, if good for anything, was available at law also, by *supersedeas*, as is shown by the case of Lockhart & McElroy, and the subsequent cases. 4 Ala. Rep. 572.

JOHN, for defendants.

1. The note upon which the sureties were liable, was extinguished by the payment made by Falls for Houston, the principal, and the proceeds of the new note of Houston, Walker & Easley, discounted by the Bank. 4 Ala. Rep. 50; Theobald, on Prin. & Surety, 1 Law. Lib. p. 2, § 5, p. 67, § 148.

But if the principal debt was not extinguished, the testimony shows clearly and conclusively, that the note of the sureties was extended. There is no doubt, therefore, that this was an extension of time on new and good consideration, and this releases the sureties. 18 Ala. Rep. 641.

From the state of the pleadings in this case, it must be taken, that the extension was without the knowledge of the sureties. The Bank did extend, and it was the duty of the Bank to prove the assent. The Bank should have given the sureties notice of the transaction, if they intended to hold the sureties liable, and can take no advantage of the want of knowledge on the part of the sureties. 1 Story's Equity Pl. 320, §§ 324, 325; 6 Ala. Rep. 718; Theobald, on Prin. & Surety, 1 Law Lib. p. 87, § 177.

The sureties have not lost the right to avail themselves of this defence, because of the judgment of the law. The excuse they render is sufficient. They did not know, and could not be required to know, that the defence existed. It was therefore impossible for them to defend. Nor was there a single fact that was sufficient to put them on inquiry. They cannot be blamed in any sense for not defending. 7 Ala. Rep. 664; 8 ib. 745, 767; Breese R. 147.

If the securities had knowledge of the defence, and had failed to make their defence from negligence or misfortune, then the case might be brought within the rule relied on by the plaintiff in error on this point; or if anything had transpired calculated to put them on inquiry, then on this point there might be some ground to invoke the aid of French v. Garner, 7 P. 552, and Lee & Norton v. Insurance Bank of Columbus, 2 Ala. Rep. 21, and Stinnet & Townsend v. Br. Bank at Mobile, et al. 9 Ala. Rep. 120.

The ground of jurisdiction in this case was originally exclusively equitable, and although the courts of law now allow this equitable defence, the chancery jurisdiction has not thereby been destroyed. The cases above referred to, and relied on by the plaintiff in error, were cases of exclusive common law jurisdiction. But in this case, the court had jurisdiction before judgment, and that jurisdiction has not thereby been destroyed or taken away. This constitutes a marked distinction between the cases cited by plaintiff in error, and the case at bar; consequently, no excuse is necessary in a case like this case. 3 Ala. Rep. 521; 9 ib. 127; 10 ib. 305; 13 ib. 198.

The facts show, that the Bank is attempting to practice a gross fraud on the securities. It extended the debt without giving the securities any notice; received the entire amount of the original debt, and then, because the sureties are ignorant of the facts, sues them and obtains a judgment, and now insists that they shall be protected, and allowed the benefit of this fraud, because it kept the truth from the knowledge of the sureties until after it procured the judgment; and after it had obtained judgment, it continues this unfair dealing with the sureties, and recklessly discharges the levy made on the property of their principal, sufficient to pay all claimed to be due. These facts bring the case within the rule as laid down in the case of French v. Garner, 7 P. 552, and all the cases of that class; consequently this unfair dealing of the Bank authorizes the relief sought, by the authority of these cases. And the case of Welborn et al. v. Tiller et al. 10 Ala. Rep. 305, and Greenlee v. Gains, 13 Ala. Rep. 198, are in point.

It is a universal rule in chancery, that laches cannot, in equity, be attributed to a party before the discovery of the

fraud, mistake, or other ground of relief. This rule must apply in this case with great force, for the sureties knew nothing of the defence or fraud until after the judgment. It would be the greatest injustice to make them suffer the loss, and allow the Bank to get the money twice, because of the improper conduct of the Bank being concealed from them by the Bank. 17 Ala. Rep. 564; Breese R. 147.

2. But if the court should think the foregoing positions insufficient, then it is insisted, that, as the sheriff had levied the execution on property of the principal debtor sufficient to satisfy the execution in full, and had the same in his possession, that the Bank, by interfering by their order to release the property from the levy, destroyed the lien acquired by the levy, and thereby discharged the sureties. 1 Story's Eq. Pl. 320, 321, §§ 324-5-6; Theobald, on Prin. & Surety, 1 Lib. pp. 84-5-7, § 174; Mayhew v. Crickett *et al.* 2 Swanst. 193; Chichester, Adm'r. v. Mason, 759; 7 Leigh's R. 244, 253; Bullitt's Ex'rs v. Winston's, 1 Mun. 269, 278.

Although this court has modified some of the rules on the subject of the release of sureties, which have been laid down by text writers, and have adopted a rule diferent from the rule in some other States, *yet this court has never decided that the facts as presented in this case do not discharge the sureties.*

The case of Sawyer v. Bradford, 6 Ala. Rep. 572, the leading case on the subject, and the case on which the other cases on the subject rest, is unlike this case. The question here presented was not raised in that case, or considered by the court, and could not be, for the facts did not authorize it. The plea in that case did not show that any levy had been made, or that any lien of any kind had been acquired. If the facts of this case had been set out in that plea, the decision would doubtless have been different.

In the case of Wilson v. Bank of Orleans *et al.* 9 Ala. Rep. 847, the facts were entirely different. The property of the surety was released from levy, and not the property of the principal. The surety received no damage by the arrangement. But the court intimated a different rule, if the property of the principal had been released. The case of Royston, Adm'r, v. Howie, 15 Ala. Rep. 309, is unlike this case, because no levy was made in that case, nor was there any

agreement to delay. In the State Bank v. Godden & Lowry, 15 Ala. Rep. 616, although there was a levy, there was no interference by the Bank with the levy; the Bank gave no order to release the property. In this case the Bank interfered, and destroyed the sureties' rights in the property levied on.

CHILTON, J.—We deem it unnecessary in this case to notice any other than the question whether the defendants in error, who were the complainants in the court below, are not entitled to relief by reason of the interference of the Bank, in ordering the sheriff to return the execution which had been levied on the principal debtor's property, by means of which the levy was discharged.

The proof in this case that the execution was delayed by the Bank, is not very explicit; but we think the answer of the Bank not being sworn to, the same amount of evidence is not required to disprove its denials as in other cases, and that the proof of the sheriff and deputy sheriff is sufficient, under the circumstances, to show that the return of the *fi. fa.* against Houston was by order of the Bank. 17 Ala. Rep. 258. We come then to consider the effect of this interference on the part of the Bank upon the rights of the securities. The counsel for the defendant in error supposes that the previous decisions of this court have settled, that the creditor's right to enforce payment out of the securities is not impaired; but upon a careful examination of them, we find none which go to this intent. The furthest this court has gone was, in holding that the sureties were not discharged by a return of an execution against the principal debtor by order of the creditor, when it appeared there was property of the principal, which could have been levied on, sufficient to pay the debt, and that he afterwards became insolvent. Sawyer v. Bradford, 6 Ala. Rep. 572; Royston, Adm'r, &c., v. Howie, use, &c. 15 Ala. Rep. 309.

It is further held, that the mere delay or want of diligence in enforcing the execution, or an agreement to delay based upon no valid consideration, will not affect the creditor's right. See cases above, and The Bank v. Godden and Lowry, 15 Ala. Rep. 616, and cases there cited. True, in the case last

referred to, it is stated that a levy had been made in the case of Sawyer v. Bradford, *supra;* but this was a mistake, as will be seen by reference to that case.

In this case, after allowing the credit of $838 $\frac{79}{100}$ as of the 2d May, 1838, but a small balance, say $250, would have remained due upon the execution. To pay this, the sheriff levied on ten bales of cotton, the property of Houston, the principal debtor, which he doubtless deemed sufficient to satisfy the execution, and which we infer from the proof of its subsequent sale at the usual rates, was sufficient, had it been applied. The effect of a withdrawal of this execution was an abandonment of the levy, and a return of the goods in which the sheriff, for the benefit of the creditor, had a qualified property.

The authorities are generally agreed, that this operated a discharge of the securities. The principal case upon the subject is that of Mayhew v. Crickett, 2 Swan. Rep. 185, where the creditor, after a levy, had withdrawn the execution. Lord Chancellor Eldon held, that the creditor was a trustee of his execution for all the parties interested, and although he might remain passive if he chose, yet if he took the debtor's goods in execution, and afterwards withdrew the execution, he discharged the surety both at law and in equity. This has been the settled law since that case, and the principle there decided has been adopted by the elementary writers on the subject. Pitman on Pr. and Su. 176–7; Theob. on Pr. and Surety, 143; Burge on Suretyship, 206; 1 Story Eq. §§ 324–5–6. It is unnecessary for us in this case to decide whether we should hold the securities discharged absolutely, or only *pro tanto*, since we regard the levy in this case sufficient.

This view is not only supported by authority, but in most cases will mete out substantial justice, as it certainly does in this. No one can read this record, which discloses that this debt was extended by the execution of a new note, with other security, anterior to the judgment against these securities; the misapplication of an instalment paid by Falls, as proven by the deposition of himself and the cashier, to the payment of another demand; the order to credit, after the judgment; the execution issued thereon, with $838 $\frac{79}{100}$ the proceeds of the note given to renew the demand on which this judgment was

rendered, which note had been discounted long anterior to the rendition of the judgment; followed by an order to return the execution, which had been levied on the property of the principal debtor, who was then in failing circumstances, and who shortly thereafter became insolvent—but must see that palpable injustice will be done them to enforce this payment. They had the right to repose on the assurance, which the conduct of the Bank was so well calculated to create in their minds, that the demand was paid; otherwise the Bank would have suffered the sheriff to sell the debtor's property, and thus have made the money. We apprehend, moreover, that when the Legislature enacted that the sheriff should levy on the property of the principal debtor first, as by the statute, Clay's Dig. 206 § 23, it was not intended that the creditor should frustrate this provision, designed for the securities' protection, by discharging the levy, and yet hold the security liable.

We are of opinion that the securities are entitled to the relief which they seek, and that the court of equity is the proper forum in which to obtain it.

Let the decree be affirmed.