## TARLETON & POLLARD *vs.* JOHNSON.

1. In trover for the conversion of several bales of cotton, the record of a former recovery in an action of detinue, brought by one who is shown to have been defendant's bailee,—which action defendant by his counsel defended, and in which, on an agreed statement of facts, his title was set up, and held subordinate to plaintiff's,—is admissible evidence for the plaintiff, and parol evidence is admissible, in aid of the record, to show defendant's connection with the case.

2. When a witness testifies, on his *voir dire*, that he was a partner of the firm which is shown by other evidence to have been defendant's vendor of the goods in suit, he may testify to the further fact that said firm was also plaintiff's vendor, thus balancing his interest, and restoring his competency.

3. A person who is shown by parol to have been the real defendant in an action of detinue, though no party to the record, is concluded by the judgment as to the title then adjudicated, but not as to a title subsequently acquired from one who was neither a party nor privy to the action; but the jury must pass upon the sufficiency of the parol evidence, and it is error in the court to assume its sufficiency.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

TROVER by William Johnson, as surviving partner of the

late firm of McCoy & Johnson, against the appellants, for the conversion of thirty-eight bales of cotton. The pleas were, the general issue, and the statute of limitations of six years. On the trial, the plaintiff offered in evidence the record of a suit in detinue, brought by said McCoy & Johnson against Holmes, Bott & Earle. The defendants having objected to the introduction of this record, because they were neither parties nor privies to it, the plaintiff offered to prove that said Holmes, Bott & Earle were mere bailees of the defendants, and claimed no interest whatever in the cotton except as such bailees; that the defendants in this suit employed counsel and assisted in the defence of that suit, and after the determination of it paid the assessed value of a portion of the cotton in suit; and that the cotton now sued for was surrendered to the defendants by said Holmes, Bott & Earle after the levy in that suit. To the introduction of this evidence, for the purpose of making said record admissible evidence, defendants objected; but their objection was overruled, the evidence was admitted, and the defendants excepted. After the introduction of this evidence, the plaintiff again offered said record in evidence, and it was admitted; the defendants objecting and excepting thereto.

"The defendants introduced one George Haig as a witness, and were about to examine him, when the plaintiff's counsel interposed, and examined him on his *voir dire*. Plaintiff's counsel only asked said witness, if he was a member of the firm of Bower & Co.," which firm, as had been previously shown by the testimony of one Davis, was the vendor of the defendants; "to which witness replied, that he was a member of said firm of Bower & Co. at the date of the transaction aforesaid; and thereupon plaintiff objected to the examination of said Haig as a witness, (relying on the testimony of Davis before stated,) upon the ground that said Haig was interested in the suit, being liable over, as plaintiff insisted, to the defendants, as warrantors of the title to the cotton; which objection was sustained by the court, and the defendants excepted. Defendants then offered to prove by said Haig to the court, that said Bower & Co. were also the vendors of the cotton to the said McCoy & Johnson, and that his interest was thereby equally balanced; but the court, on motion of the

plaintiff's counsel, refused to permit the proof of these facts by the witness, and thereupon defendants excepted."

The court charged the jury, " that possession is evidence of title ; that if the cotton was on storage in the warehouse of Holmes, Bott & Earle on the 31st day of January, 1846, the date of their receipt to McCoy & Johnson, the receipt of February 13th, 1846, to Tarleton & Scott, did not show a divestiture of their title, unless evidence was given of Bower & Co.'s right to control it at that time ; that if Holmes, Bott & Earle, when sued, suffered Tarleton & Pollard to defend the suit, and if they defended the suit for all the cotton, relying on their own title, and that the cotton, during the suit, was surrendered to them, and disposed of by them, and that the cotton now sued for is part of the same cotton, then the judgment in that case is evidence of title against the defendants." The defendants excepted to these charges, and asked the court to charge as follows : " 1st, that if the jury believe all the evidence in this case, they cannot regard the verdict and judgment against Bott & Earle as conclusive evidence of title in the plaintiff, so far as respects Pollard ; 2d, that if they believed the cotton belonged to Pollard on the 14th day of February, 1846, they must find for the defendants." The court refused to give these charges, and the defendants excepted to each refusal.

The charges given, the refusals to charge as requested, the admission of the evidence objected to by defendants, and the exclusion of the evidence offered by them, to all of which they excepted as above shown, are now assigned for error.

Bobt. B. Armistead, with whom was Henry C. Semple,, for the appellants :

The record was not admissible, because the parties were not the same, and because Pollard's title was an immaterial issue in the first suit.

In the Duchess of Kingston's case, 20 Howell's State Trials, p. 578, Lord Chief Justice DeGrey says : "A judgment of a court of competent jurisdiction, directly upon the point, is, as a plea, a bar, or, as evidence, conclusive, between the same parties, upon the same matter directly in question in another court. But neither the judgment of a concurrent or exclusive

jurisdiction is evidence of any matter which came collaterally in question, though within their jurisdiction, nor of any matter incidentally cognizable, nor of any matter to be inferred incidentally by argument from the judgment." The subject-matter directly in point in both cases must be the same, and the parties must be the same ; the rule being extended to their privies. The defendant in this case was not a party to the record offered, nor was he a privy. To be estopped by this record as a privy, Pollard must claim under Bott; whereas he claims above and before him, and is privy neither in blood, in law, nor in estate.—Coke's Litt. 352 a ; 3 Coke 457. A verdict against one under whom either plaintiff or defendant claims, may be given in evidence against the party so claiming ; *contra,* if neither claims under it.—Viner's Abr., Evidence (A, b. 76), pl. 1; 1 Ad. & El. 783 ; Outram v. Moorewood, 3 East 346. One who takes an estate, takes it supported or qualified by any estoppel which affected him under whom he claims.— Wood v. Davis, 7 Cranch 271; 1 Wheat. 6 ; 14 Johns. 79 ; 9 Ala. 741; 12 *ib.* 482. The case of Alexander v. Taylor, 4 Denio 302, is much in point : if the cotton had gone into the possession of McCoy & Johnson, and Pollard had brought suit, the two cases would have been parallel in their particulars. Johnson ought not to be allowed to sue Bott, thus depriving Pollard of his testimony, and thus build up an estoppel and circumvent the law.

In many of the cases above cited, the record relied on was pleaded as an estoppel. No case of any authority has ever given more weight to a record when offered in evidence, than when pleaded as a bar ; and only in modern cases, and in some courts, has it been allowed equal weight. The old doctrine may be found in Trevivan v. Lawrance, Salk. 276 ; Vooght v. Winch, 2 B. & Ald. 662. Therefore, in the cases cited, where the former record, when pleaded, was no estoppel, it could not be conclusive if given in evidence.

But, although Pollard was not a nominal party to the former record, nor privy to any party thereto, it is contended that he was the substantial party to the record. We answer, that the plaintiff cannot show who were the parties to that record, except by the record itself.—Jones v. Kolisenski, 11 Ala. 607; 18 *ib.* 24 ; Allen v. Hall, 1 A. K. Marsh. 525. The

New York cases, in which intimations to the contrary are given, are clearly distinguishable from the case at bar, as will appear from an examination of them and of the authorities relied on.

As to the issue: In the first suit, the point properly in issue was, the wrongful detainer of Holmes, Bott & Earle; Pollard's title was immaterial and irrelevant, and therefore the former record is for this purpose inadmissible. Bott could not defend under Pollard's adverse title, Holmes, Bott & Earle being the bailees of McCoy & Johnson, and having given their receipt as warehouse-men.—Smith's Mercantile Law, p. 102; 9 Bing. 378; 7 ib. 345; 2 Campb. 344; 2 B. & Ald. 310; 9 Ala. 317; 12 ib. 520; 20 ib. 578. If it be said, that Pollard's title was in fact passed upon, the answer is, that the true rule is, not whether the court passed upon that title, but whether that title was material in law.—Mondel v. Steel, 8 Mees. & W. 858, and cases in note. If the rule were otherwise, Pollard might be injured as it is; but if his title had been good, the case would have been lost, because it was immaterial.—1 Green. Ev. § 524. Pollard's title is not *res adjudicata*, and therefore the record is inadmissible.—2 Yerg. 467; 8 Pick. 113; 6 Ala. 270.

Therefore the record was not admissible, and the court erred in admitting it; and, if admissible even, it certainly was not conclusive, as charged by the court; and, if conclusive at all, it was only as to title on the 17th April, 1846, and Pollard may have afterwards acquired title.

Haig, having rendered himself incompetent on his *voir dire*, could restore his competency, by showing that Bower & Co. were liable to Johnson, and thus balancing his interest.—1 Phil. Ev. 155; 1 Greenl. 461; Herndon v. Givens, 19 Ala. 313; 16 ib. 261; Dent v. Portwood, 17 ib. 242.

DANIEL CHANDLER, *contra:*

The appellants are concluded by the record, 1st, because they are privies to the judgment. The doctrine is found very fully discussed in the cases of Trevivan v. Lawrance *et al.*, and Doe v. Oliver, 2 Smith's Lead. Cas. 435, 486; 3 Cow. & Hill's Notes, pp. 813, 814, 815, notes 562-63-64-66-67; 1 Stark. Ev. 191; 2 Stew. & Por. 134; 9 Por. 412. 2d, Tarleton & Pollard

took possession of the cotton after the suit was brought against Holmes, Bott & Earle, and while it was in the custody of the law. The record is as conclusive against them, under such circumstances, as it would be against the original defendants. 13 Johns. 447; 8 Cowen 290; 3 Barb. Ch. R. 341; 3 Ala. 158; 4 *ib.* 592 ; Cow. & H. Notes, n. 567 ; 3 Porter 138-143 ; 20 Ala. 280.

Parol evidence was admissible to connect Tarleton & Pollard with the cause.—Cow. & Hill's Notes 838 ; 8 Wend. 9 ; 3 Cow. 120 ; 3 Comstock 511; 6 Ala. R. 27, 780; 7 *ib.* 161; 4 Cow. 562 ; 16 Serg. & Rawle 282, 285. These authorities establish the fact, that where the record itself does not show that the matter in issue was necessarily and directly found by the jury, evidence *aliunde* consistent with the record may be received to prove the fact. The evidence was offered as a whole to connect Tarleton & Pollard with the record. The evidence was offered in the first instance to the court, and the judgment of the court as to its sufficiency is not revisable. It is clearly sufficient. The agreed state of facts was a part of the record, and already in evidence. It was proper evidence to show the subject-matter of the former suit, and *what* was the ground on which the judgment was rendered. It was admitted only for that purpose, and to prove the fact in issue in the former suit it was admissible.—6 Ala. 35. It was not evidence for all purposes ; it was not evidence even to prove all the facts it recited. The former cause and this cause related to the same subject-matter. Certain property was involved in both suits, and certain facts were in issue in the former suit. There was a connection between the suits, and on the trial of the former suit these admissions were evidence to settle the right to certain property. To prove that the same property was involved in this suit that had been recovered in the former one, was the object of this evidence, and for this purpose it was admissible. We wish to prove, by this agreed statement, no new fact—not what the admissions were—but simply whether or not the matter now in dispute was in issue in the former suit. The record does not show it. Parol evidence, not inconsistent with the record, may be resorted to. On the former trial, the agreed statement of facts was admissible, and was introduced ; on this trial we can use

it, not as admissions of facts, but simply to show that in the former suit certain cottons were sued for and recovered. In this case we do not rely on the *facts* stated in that agreement; we don't care what they were ; what we wish to show is, that the subject-matter of this suit was involved in that suit, and showing that, the law says, as we have endeavored to show, that the defendants are concluded by it. In short, we use the admission to identify the causes of action, not to prove facts. The identity, not the existence of facts, is proved by us. We say this matter has been settled by a judgment of the court, and as the record does not show it, this evidence does.

As to the rejection of Mr. Haig—

1. There is an implied warranty in the sale of personal property, and a party to a sale is not a competent witness to sustain his title. He is liable for the recovery and costs.—6 Johns. 7; 2 Harr. & Gill, 176 ; 6 Greenl. 416 ; 17 Maine 378; 2 Kent 574.

2. The fact of Haig's interest appeared to the court from the evidence of Davis. Davis swore that he had purchased the cottons from Bower & Co., and paid them the price, and took their receipt. It was not competent for Haig—one of the partners—to remove this charge of being interested, when the fact had not appeared by his own evidence. The only fact asked of Haig was as to his identity—whether or not he was a member of the firm of Bower & Co. when the sale took place. If so, he was an incompetent witness, and the objection to his introduction was properly sustained. The defendants endeavor to remove the objection by showing that Haig was an indifferent witness, and this fact they attempted to prove by Haig himself. His testimony was not admissible to remove the objection to his competency. If other competent witnesses had showed that fact, then the objection that he was interested would have been removed.—13 Conn. 319; 1 Cow. 513, 535; 1 Martin (N. S.) 709; 17 Ala. 247; 22 Eng. Com. Law, note, Tindal's opinion. Again ; Haig was not a competent witness, on the ground of public policy. The object of his testimony was to defeat the title of the plaintiff— a title that he had made. The same cottons that were sold to McCoy & Johnson on the 31st of January, by Bower & Co.,

were afterwards sold by them to Tarleton & Scott. Haig is now introduced by the defendants, to invalidate our sale, and to establish that of the defendants. In selling the cotton to the defendants, Bower & Co. impliedly warranted the title, and Haig, one of the firm, is introduced now to support that title. If he was not interested, (as he clearly is,) he ought to be rejected on grounds of public policy.—20 Ala. 584.

As to the charges of the court—

1. The first charge is, that McCoy & Johnson having stored the cotton with Holmes, Bott & Earle in January, 1846, a voluntary and unauthorized acknowledgment by them of the title of Tarleton & Scott, the 13th of February after, did not divest that title. It appears from the record, that Tarleton & Scott obtained a receipt two weeks after that of the plaintiff, and there is no proof of their manner of obtaining it. The court says, in this case, that did not defeat the title. In so saying, the court only decided what was settled in the former trial of the cause.—20 Ala. 578.

2. The court further charged, that if Holmes, Bott & Earle, when sued for the cotton, suffered Pollard & Tarleton to defend the suit, and if it was defended by them and on their title, and if they received the cotton and disposed of it, and this cotton is the same, this judgment is evidence of title. The reasons for this charge have already been fully considered. If the defendants were privies to the ·record, and received the cotton after suit and levy, as is abundantly proved, then the judgment in the former case is evidence of our title in this case.

3. The defendant asked the court to charge the jury, that if they believed all the evidence in this case, they could not regard the judgment as conclusive against Pollard. Such an instruction the party had no right to ask. The judgment was evidence of title ; that the court had decided. The weight of the evidence the court had not declared. Some authorities say it would be conclusive ; others, but *prima facie*, that is, conclusive if not repelled. The court was entitled to the information as to the facts of the case, which determined the weight of the evidence. The court was not required to hunt through the evidence for the facts that tended to diminish the weight of this evidence. The counsel was bound to

state the particular circumstances or facts that contributed to effect this result, and to ask the court for an instruction founded upon them only. The court, however, was authorized to find that the judgment was conclusive upon all the evidence. If, however, the court was not authorized to do this, it was not bound to say it was not conclusive. The charge, in the terms in which it was asked, tended to mislead and confuse the jury. It did not ask the court to charge the precise effect of this judgment by itself, or in connection with specific facts, but was negative and unascertained. The court was required to say it was conclusive evidence, if the jury believed all the evidence.

4. The last instruction asked was, that if the jury believed the cotton belonged to Pollard on the 14th February, 1846, they must find for the defendants. The court had previously charged the jury, that if the cotton was stored by the plaintiff with Holmes, Bott & Earle on the 31st January, 1846, and they gave the plaintiffs their receipt on that day, that their subsequent receipt to Tarleton & Scott, on the 13th of February, 1846, did not divest the plaintiffs of their title. In other words, the transfer of the cotton so stored by Bower & Co. to the plaintiff, on the 31st January, 1846, gave the plaintiff a title to the cotton; and the subsequent transfer to Tarleton & Scott of the same cotton, on the 13th of February, did not divest the plaintiff of this title. The receipts were before the court; the evidence on this point was conceded; there was no conflict or dispute about it. The court was justified, therefore, in refusing to charge that the cotton belonged to Pollard on the 14th of February. Again; the plaintiff traced his title to the judgment, that related to the suit in April, when the cotton was seized by the sheriff. The possession of Pollard was after the levy, and subject to that suit. We could have compelled a restoration of the cotton by a writ of *distringas*, if the cotton had been in the defendants' possession, for they came in possession *pendente lite*, and subject to the same liabilities that had been incurred by the original defendants. The plaintiff's case makes out a state of facts showing that the matter now in controversy was concluded by a previous judgment; this estopped the defendants as to every other matter. Until he adduced proof tending to

Tarleton & Pollard v. Johnson.

do away with this state of the case, the court should have acted on it, and excluded all other proof. It was in this view of the case immaterial what was the ruling of the court as to the other proof offered; for all such should have been excluded; and whether it was wrongfully excluded or not, the result was right and should be upheld. The defendants should have shown that they made proof, which, at least, would have left the matter of previous conclusion open as a fact, before they could claim to put in any evidence to the merits.

5. The merits of the case are clearly with the plaintiff; and if any error has been committed, (which we do not admit,) its ultimate decision must be against the defendants; provided the cotton now sued for was embraced in the former suit, and afterwards received by the defendants; and provided further, they are privies to that suit. On these two points the evidence and the law are clear and conclusive. If so, the court will look at the rights of the parties, save unnecessary litigation, and do justice now, rather than postpone its administration to another time.

CHILTON, C. J.—William Johnson, as survivor of the late firm of McCoy & Johnson, brought an action of trover against the appellants to recover thirty-eight bales of cotton, alleged to have been converted by them.

It appears that these thirty-eight bales were a portion of a lot of cotton which had previously been recovered by McCoy & Johnson in an action of detinue against the firm of Holmes, Bott & Earle, (see the case reported in 20 Ala. 578,) and that the sheriff, in taking replevy bonds from Holmes, Bott & Earle in that suit, had omitted to insert these thirty-eight bales, but had returned the whole of the cotton to H. B. & E. upon their giving bonds only for sixty-five bales. After the cotton was thus replevied, and pending the suit, that now in controversy, with other portions or the whole of it, was delivered by H. B. & E. to Tarleton & Pollard, the appellants, who employed an attorney, and defended the first suit for the defendants, who occupied the position of warehousemen or bailees to them. It further appeared that the replevy bond was given by the procurement of the present appellants, and that after the final judgment was rendered, and one of

the obligors in said bond had paid the alternate value of forty bales of the cotton, Tarleton & Pollard had repaid this money. All this, however, was made to appear by proof *de hors* the record, and which was excepted to in the court below, the record itself furnishing no evidence that Tarleton & Pollard were parties or privies to that controversy.

The first and main question for consideration is, whether it was permissible to introduce parol proof, to show the connection of Tarleton & Pollard with that suit, and if so, whether the verdict and judgment then rendered are to be conclusive upon them in this action.

There are a number of cases, which seem to discountenance the doctrine of aiding a record by extrinsic parol proof (see them referred to in 3 Phil. Ev., Cowen & Hill's Notes, pp. 838, 839, n. 590) ; but the great preponderance of American authority is in favor of its admission.—See Parker v. Thompson, 3 Pick. 429 ; Kilheffer v. Herr, 17 Serg. & Rawle 319; 3 Phil. Ev., *supra*, and cases cited in note 590. Whether any matter has been tried before between the same parties, and judicially decided, must, in most cases, necessarily depend upon parol evidence in part. The identity of the parties, and of the subject-matter, can only be shown in this way.— Cist v. Zeigler, 16 Serg. & Rawle 282 ; Crotzer v. Russell, 9 *ib.* 81. So, the record of a judgment against *James* R. is admissible in an action against *Joseph* R., if it is made to appear that the latter was the same person, and in fact a party to the suit, and defended it.—Stevelie v. Read, 2 Washington's Cir. Court Rep. 274.

We are aware that it has been held by the Court of Appeals of Kentucky, that no persons can be considered parties to a suit, so as to be bound by the judgment, unless they appear *by the record* to be such, and that extrinsic evidence is not admissible to prove that persons not named in the record were parties (Allen v. Hall, 1 Mar. 526); but this strictness does not accord with the current of American decisions, nor indeed with the text-writers on the subject.—See cases collated in 3 Phil. Ev. (C. & H. notes) 974-5.

Mr. Peake, in his work on Evidence, p. 74, says : " But where it is said a verdict is not evidence for or against one who is not a party to a cause, it is not to be understood that

a man who merely uses the name of another for his own benefit, is not bound by the verdict which is given against him. Courts of justice will take notice, in these cases, who is the real plaintiff or defendant in a cause," &c.

Mr. Starkie (vol. 1, p. 219, marg.) says : " It is not essential that either the parties, or the form of action, should be the same, if they are *substantially* the same."

Mr. Phillips (vol 1, p. 324) says: " In considering the effect of verdicts and judgments, courts of justice will always take notice of the real parties to the suit." See, also, Gilbert's Law of Ev. p. 35.

Mr. Greenleaf (vol. 1, p. 672, § 523) says : " All persons who are represented by the parties, and claim under them, or in privity with them, are equally concluded by the same proceedings."

An application of the doctrine asserted by the text-writers will be found in the case of Kennersley v. Orpe, 2 Doug. 517, where an action of trespass was brought by the owner of a fishery against William Orpe ; and the defendant justified as the servant of Doctor Cotton. The evidence showed that a previous action had been tried between Kennersley and *Thomas* Orpe, another servant of Cotton, involving the same right, and had been decided for the plaintiff, and that both the Orpes had acted by the command of Cotton, who ordered the defendant to fish in the same place, that he might try the right over again, of which he gave notice to the plaintiff.— The question came up, whether the verdict and judgment in the first case should be received as evidence in this, the parties appearing on the record to be different. Upon the trial at the assizes, Baron Perkyn overruled the objection to the admission of the record, and held the judgment to be conclusive. Upon motion for a rule to show cause why a new trial should not be granted, the court of King's Bench held the record of the former judgment admissible, but that it was not conclusive.

The authority of this case was questioned by Lord Ellenborough in Outram v. Morewood, 3 East 366, but it is cited without disapprobation by the elementary writers, and, when rested on the ground that both actions were substantially between the same parties, it is clearly defensible. See opinion

of Spencer, C. J., in Case v. Reeves, 14 John. 82; also, Shelton v. Barbour, 1 Wash. 64; Calhoun's Lessee v. Dunning, 4 Dallas 120.

In the case last cited, an action had been tried between Dunning and Caruthers, involving the right to the *locus in quo* claimed by Calhoun in this suit. It appeared that Caruthers, the then defendant, was the person now really interested in the land, and that Calhoun was a mere trustee for him, and that an action might be brought in the name of the *cestui que trust*. It was objected that the former judgment in favor of Dunning was not between the parties to this suit, and should not, therefore, be allowed to affect their rights; but the court said : "We can never acquiesce in an attempt so manifestly calculated to evade the truth and justice of the case. Shall it be in the power of a party, by suppressing a deed, or by employing the name of a trustee, to avoid the legal effect of a judgment rendered against him?" They add: "It is plain the name of Calhoun is now employed for the use of Caruthers ; and that the parties are really, though not nominally, the same in both suits."—1 Mon. 253 ; 4 Gill & John. 407 ; 10 Pick. 166 ; 4 Rawle 273 ; 4 Wash. Circuit Court Rep. 503.

Applying these principles to the case before us, we find but little difficulty in the solution of the question as to the admissibility of the record of the former judgment. Holmes, Bott & Earle, it is true, were defendants, as shown by the record, but they were the bailees of the appellants. The latter carried on the suit in their names, and employed counsel, and made a full defence. Whether, in strictness of law, their title could have been properly adjudicated in an action against their bailees, is not material now, since it is shown by the record that it was set up, and was decided upon, on the submission of an agreed state of facts, and held subordinate to the title of McCoy & Johnson. They had the sole management of the case by their counsel. It was tried upon their agreed state of facts, in which their title was set up by their counsel, and the case was brought to this court, where it was affirmed. Finally, after the judgment was rendered against their bailees, they proceed to make satisfaction of it, so far as to relieve the persons whom they procured to become sureties

on the replevy bond. Under this state of facts, to hold that they were strangers to that proceeding, would be to shut our eyes to the truth of the case, and to look alone to the nominal, rather than the real, substantial parties to the litigation. Indeed, under the agreed state of facts, the conflicting claims of these respective bailors to the cotton, were as fully adjudicated and decided upon, as they would or could have been under the old common-law practice in actions of detinue, where the bailee, a mere stakeholder, by process of garnishment compelled the two claimants of the subject-matter of the bailment to interplead. This the claimants have substantially done in the first case that was tried; and after an express adjudication adverse to their claim, it is not for them to say that nothing has been decided which should bind them. See, as to the common-law practice of interpleader in detinue, Viner's Abr., titles, Detinue and Interpleader.

Our conclusion is, that there was no error in admitting the parol proof showing who were the real parties in interest in the former suit, and that the judgment was properly received as evidence against the appellants.—Clark v. Dignam, 3 Excheq. Rep. 478.

As respects the testimony of Haig to prove himself competent : we think the court erred in its rejection. True, if his interest had been made to appear independent of his own evidence, he should not by his testimony be allowed to render himself competent. But the counsel for the appellee examined him upon his *voir dire*, and proved that he was a member of the late firm of Bower & Co., who sold the cotton to the appellants. This was a fact—his being a member of that firm—which went directly to show his interest, and without which it was not made out. Having charged himself, he could in the same way discharge or balance his interest. In Butcher's Co. v. Jones, 1 Esp. 160, the witness, in answer to a similar question, stated that he was a member of a chartered company, which made him interested, and this would seem, as in the case before us, to be an inquiry merely as to his identity ; yet he was allowed to proceed and prove that he had been disfranchised, and thereby render himself competent.

So, in a suit by an administrator, a witness introduced on

his behalf was asked if he were not one of the heirs-at-law, and answering in the affirmative, was held competent to discharge himself by proving a release of all his interest in the estate.—Ingram v. Ward, cited in 1 Greenleaf's Ev. p. 572, § 422, n. 6.

The charge that the judgment was conclusive, was likewise erroneous. It depended upon the parol proof for its connection with the appellants, which the jury might or might not think sufficient to establish such connection. If the plaintiff had replied the judgment by way of estoppel, he must needs have averred the facts connecting the appellants with it, or it would have amounted to nothing ; for, *prima facie*, it is *res inter alios*. These facts, then, should have been submitted to the jury in connection with the record ; so that, when the court held the record conclusive, it must needs have been assumed that the proof showing the appellants' connection with it was conclusive. We are of opinion, that if the appellants are connected so as to make them (or rather Pollard, the party beneficially interested) the real defendants, then the judgment becomes conclusive *as to the title adjudicated in that suit*, but not as to a title subsequently acquired from persons not parties or privies to that judgment. The case of Kennersley v. Orpe, *supra*—the strongest case which we have seen for the appellee—held that the judgment was not conclusive.

As the case must go back for another trial, it is not necessary to discuss the other questions argued at the bar. What we have said will be sufficient to govern its future conduct.

Let the judgment be reversed, and the cause remanded.

NOTE BY REPORTER.—Mr. Semple, of counsel for the appellants, afterwards filed a written petition asking a modification of that part of the foregoing opinion which asserts, that if the appellants were connected with the former suit, " so as to make them the real defendants, then *the judgment becomes conclusive as to the title adjudicated in that suit*, but not as to a title subsequently acquired from persons not parties or privies to that judgment." He contended that the judgment would be conclusive on the appellants only as to all defences which could have been made by them in that

suit; that Pollard, at the commencement of that suit, had a title which could not, under the rules of law, have been made available in that case, because Bott & Earle were estopped from setting up an outstanding title in a third person by the relation which they occupied towards McCoy & Johnson—that of warehouse-men; and yet his title could be made available as a complete defence in an action by McCoy against him directly. To show that Pollard's title could not not have been set up as a defence in that case, however good it might be in an action against him directly, he cited Story on Bailments, §§ 266, 450, 582 ; Cowp. R. 244, 344; 6 Ad. & El. 515 ; 2 B. & C. 540 ; 7 Bing. 339 ; 10 *ib.* 246 ; 9 Price 269 ; 44 Law Lib. 353–4. And to show that, although a defence was attempted by way of recoupment, and sustained, yet the party might bring an action for the same matter, if there was any part of his cause of action which could not have been used as a defence in the former suit, he cited 8 Mees. & W. 858 ; 2 Johns. 30 ; 7 *ib.* 22 ; 6 Cowen 262.

To this application the court responded as follows :

CHILTON, C. J.—We have examined this petition, and re-examined the opinion; and we are satisfied the modification asked for should not be made.